**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 3:24-CR-77 (OAW) |
| | : | |
| AUBREY ROSE. | : | |

<u>**OMNIBUS RULING**</u>

**THIS ACTION** is before the court upon the defendant's Motion to Dismiss the

Indictment, ECF No. 102, and the several motions in limine filed by both parties, ECF

Nos. 63, 68, and 115.  The court has reviewed all the motions, the parties' responses and

replies thereto,[1] and the record in this matter, and is fully apprised in the premises.

### I.    BACKGROUND[2]

Mr. Rose is a military veteran, and it is a matter of public record that he believes

he has been denied certain benefits to which he is entitled because of his service.[3]  He

has filed numerous complaints on this topic to several government agencies over the past

few years, though apparently without the results he desires.

In March 2023, he emailed several parties (including four Congresspeople) about

his frustrations, and he included a remark that he would exercise his Second Amendment

rights if his concerns were not addressed.  This email brought federal agents to his

---

[1] Mr. Rose, through counsel, sought an extension of time to file a reply in support of his motion to dismiss, but then timely filed that reply.  Accordingly, the motion for an extension of time, ECF No. 109, is denied as moot.
[2] The facts related herein are taken from the criminal complaint that started this action, ECF No. 1, and are assumed to be true for purposes of this ruling.
[3] Not only has he professed as much in hearings and filings in this action, but he also has filed a civil suit against the United States for denial of certain benefits.  *See Rose v. USA*, case no. 23cv1642.

residence a few days later, where they interviewed him. Relevant here, during that interview he stated that he hoped the recipients of that email were afraid. The agents admonished him not to engage in any similar conduct, but no criminal charges were pursued at that time.

Mr. Rose receives medical treatment for the effects of a traumatic brain injury ("TBI") and post-traumatic stress disorder ("PTSD"), both of which relate to his military service. Thus, he was a patient at the Veterans' Affairs Medical Center in West Haven, Connecticut (the "VA"). It is not clear when or why, but at some point before the events that gave rise to the crime charged in this case, the VA "flagged" Mr. Rose such that he was required to check in with the VA police when he arrived at the medical campus, and two VA police officers were to escort him around the campus.

Thus, on December 20, 2023, when Mr. Rose had several appointments at the VA, he already was not permitted to travel through the campus alone. On that day, though, he did not check in. Rather, he went straight to his first appointment, met with his provider, and then went to another appointment. The VA police had been watching his movements on closed-circuit television, and while he was in the waiting room for his second appointment, the police entered and positively identified him. Mr. Rose then left and went to his car before returning to the building, now attired in a tactical vest and carrying a bullhorn. Security contacted him upon his reentry and followed him as he traversed a seemingly random path through the building, going up and down several different elevators and staircases. Finally, he turned to the officers and said, "Next time I come back, I'm bringing a weapon." He repeated the comment a second time and then said,

"You have been warned."  Shortly after making those comments, Mr. Rose returned to his car and left the campus.  The duration of the entire incident from his reentry in the building to his departure from the campus was approximately six minutes.

Mr. Rose then went to the FBI visitor's center in New Haven.  The Complaint alleges that he went there to follow up on a complaint he had filed two weeks earlier accusing the VA of being corrupt, though the government contends Mr. Rose subsequently explained that part of the reason he went there was that he knew his comments at the VA could have been construed as a threat, and he wanted to tell the FBI he did not intend to do any harm.  Apparently, though, Mr. Rose reiterated to the FBI that if he did not get the help he needed, he would have to return to the VA with a firearm.

Mr. Rose was charged in a one-count indictment with threatening a federal official in violation of section 15(a)(1)(B) of Title 18 of the United States Code.  ECF No. 38.  The sole predicate of the charge are his comments on December 20, 2023.

Mr. Rose initially asserted his right to trial, but one week before jury selection he expressed interest in the government's offer of pretrial diversion.  However, months later, when the agreement was nearly final, he declined the offer and elected to proceed to trial.

For Mr. Rose to be convicted as charged, the government must convince a jury beyond a reasonable doubt: (1) that Mr. Rose threatened to assault or murder employees of the United States Department of Veterans Affairs, and (2) that he did so with the intent to impede, intimidate, or interfere with the employees' performance of official duties, or with the intent to retaliate against them because of their previous performance of such official duties.  18 U.S.C.A. § 115 (a)(1)(B).

Because the first element of this law restricts speech, the government also must show that Mr. Rose's comments were a true threat not protected by the First Amendment. In so doing, the government must convince the jury beyond a reasonable doubt that: (1) a reasonable person would have taken the comments as a threat (the objective element), and (2) Mr. Rose made them despite being aware that they could be construed as such.

Mr. Rose has moved to dismiss the indictment for insufficient evidence. Because it may rely upon evidence likely adduced at trial, the court starts with the motions in limine.

## II.    <u>MOTIONS IN LIMINE</u>

It is well-settled that federal district courts have inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 (1984). Hence, they consider motions in limine "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A ruling on a motion in limine is subject to change during trial, particularly if the evidence differs from the original proffer. *Luce*, 469 U.S. at 41–42. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Id.* "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Byrne v. Yale Univ., Inc.*, No. 3:17-CV-1104 (VLB), 2020 WL 5258998, at *2 (D. Conn. Sept. 3, 2020).

### a.    <u>Uncharged Conduct</u>

The parties disagree on whether the government may present evidence of conduct

4

Mr. Rose committed, but for which he was not charged.  Specifically, the government wishes to introduce evidence of Mr. Rose's March 2023 email and his subsequent interview with law enforcement, which the defendant opposes.  Though the government does not separately charge them as a crime, it asserts that Mr. Rose's comments to federal agents (hoping the email recipients were afraid) are relevant to prove Mr. Rose's mens rea for the crime actually charged.  Mr. Rose counters that such conduct lacks probative value in that it was not directed to the VA and did not use similar language, and he asserts that any probative value is far outweighed by the potential for prejudice.

The court finds that the March 2023 email and interview are not relevant and therefore any evidence related thereto must be excluded.  It is not sufficiently connected to the charged conduct, and each arose in different contexts and was directed to a different audience.[4]  Further, in assessing Mr. Rose's mental state on December 20, 2023, his mental state from nine months earlier is unjustifiably prejudicial in this instance and does not warrant presenting the jury with such uncharged conduct.  Nor can this fairly be characterized as a single continuing course of conduct, given the amount of time between the two events.

### b.  Mr. Rose's "Flagged" Status

The parties also disagree whether the government should be permitted to adduce evidence that Mr. Rose was "flagged" by the VA at the time of the charged conduct.  If such evidence is permitted, Mr. Rose seeks to offer that he was flagged improperly; the

---

[4] Similar analysis could be applied to allegations from June 5, 2023, and photographs of Mr. Rose with "what appear to be knives strapped to the tactical vest" he was wearing when escorted out of a building while attempting to access the office of a member of the United States Congress.  ECF No. 1-1 at 7 ¶14. Conduct from that incident is described as threatening and fear producing, but is not charged in this case.

government opposes such a remedy.

It is an important detail of the charged conduct that the VA police officers were not following Mr. Rose around the VA Medical Center campus for any improper purpose when Mr. Rose made the statements at issue.  Thus, his "flagged" status must be admitted, but (as the parties apparently agree) the conduct that gave rise to that status is irrelevant and thus inadmissible at this trial.

The government objects to evidence that Mr. Rose finds his "flagged" status unwarranted, arguing that such evidence would confuse the jury and will waste resources litigating ancillary issues.  The court agrees this is not the appropriate venue in which to litigate whether the VA's determination was warranted, but finds that Mr. Rose's objection to that determination is relevant to the elements of the crime charged, since that belief could bear upon his mental state at the time he made the comments at issue.

Thus, the court will permit evidence that Mr. Rose was "flagged" by the VA (but not evidence of the reasons therefor), and that Mr. Rose felt such designation was unwarranted (but not the particulars of his argument on this point).  The court would entertain a stipulation from the parties that instructs the jury accordingly.

### c.  Defendant's proffer

The government seeks to introduce excerpts of a proffer interview with Mr. Rose. While the parties were negotiating the since-rejected pretrial diversion agreement, they engaged in a proffer interview, during which Mr. Rose explained he went to the FBI after leaving the VA on December 20, 2023, at least partially because he understood that his comments at the VA could be taken as a threat and he wanted to explain that he did not

6

intend to harm anyone. The government wishes to offer this as rebuttal evidence, regardless of whether Mr. Rose testifies, as the proffer agreement permits certain representations therefrom to be admitted at trial, including as rebuttal evidence. Mr. Rose argues that it is premature to rule on this question, since he has not yet breached the agreement in a way that might trigger the rebuttal term (as conceded by the government).

The court denies without prejudice admission of such proffer meeting statements, subject to renewal at trial. Mr. Rose is on notice he might open the door to its admission.

### d.  Opening Statements

The government asks to present 10-minute opening statements, while the defense argues that they are not the norm for criminal trials in Connecticut. The undersigned traditionally permits short opening statements in criminal trials upon request (to aid the jury in understanding the case), and therefore grants the government's request here.

### e.  Sequestration of Witnesses

The government asks that all witnesses be sequestered, but for its lead case agent, FBI Task Force Officer Jonathan Sylvester, such that he may be present throughout trial. Mr. Rose agrees to sequestration, but objects to the Officer Sylvester exception, arguing that this is not so complex a case as to require his continued presence. While the case is not complex, the government's request for the presence of an agent familiar with Mr. Rose's conduct (and the investigation related thereto) is just as reasonable as would be the defense request for the presence of an investigator at counsel's table (which this court has permitted in other criminal cases), and therefore the request is granted. One investigator or case agent for each party may be present with

that party throughout trial.

### f.  Mr. Rose's Mental Health

The government moves to exclude any evidence of Mr. Rose's mental health, arguing that Mr. Rose has not disclosed that he will use such evidence under the Federal Rule Criminal Procedure 12.2.  Mr. Rose argues that his mental health is the reason he was at the VA on the day in question, and thus the fact of his ailments is integral to the facts of the case.

In the first instance, the rules only require Mr. Rose to disclose whether he will be using an *expert* to testify to his mental conditions insofar as those conditions bear upon the issue of guilt.  It does not appear that Mr. Rose will call any experts at his trial, and so Rule 12.2 apparently is inapplicable here.  Moreover, the court agrees with Mr. Rose that he may specify the conditions that brought him to the VA on the date in question.  The court therefore denies this motion without prejudice to renewal at trial should Mr. Rose attempt to introduce evidence of his mental conditions for any other purpose.

### g.  First Amendment

The government moves to prohibit Mr. Rose from citing his First Amendment right to free speech, arguing that true threats are not protected by the First Amendment, so any reference to the freedom of speech might confuse the jury.  Mr. Rose counters that referencing the First Amendment should be permissible because the principal question of this case is whether his speech was protected.

Jurors are likely to have some general familiarity with the First Amendment whether or not it is mentioned, and the court is confident that appropriate jury instructions

will be followed by the selected jurors.  Accordingly, the motion is denied.

### h.  **Character Evidence/Intent**

The government asks the court to prohibit Mr. Rose from producing any testimony about his peaceful or nonviolent nature, asserting that any such evidence is irrelevant to the crime charged.  Mr. Rose counters that this motion is premature, and he ought to be able to provide such evidence provided it is not otherwise inadmissible.

The court agrees with the government that character is not an element of the charged crime, and that good character evidence as to nonviolence is unlikely to relevant at trial.  However, to the extent that it is offered and admitted as evidence, testimony as to Mr. Rose's nonviolence could open the door to rebuttal of such evidence, perhaps including evidence otherwise deemed inadmissible by the court.  For all of those reasons, the court defers ruling upon this motion until and unless the issue is raised at trial.

### i.  **Intent**

The government moves to preclude Mr. Rose from testifying that he did not intend to carry out the threat, arguing that any such evidence is irrelevant to the elements of the crime charged.  Mr. Rose responds that his intent is integral to his argument that his comments were hyperbolic.

Given that intent is an element of the crime charged, the court will permit testimony to the contrary from Mr. Rose.  Thus, the motion therefore is denied.

### j.  **Body-Worn Camera Footage**

The government's request to display transcripts of body-worn camera footage is denied insofar as it has not yet been produced to the defense.  Denial is subject to

renewal, just as the objection might be withdrawn if accuracy of the transcript is confirmed.

### III.     <u>MOTION TO DISMISS</u>

Having so ruled, the court turns to Mr. Rose's motion to dismiss the indictment.

The Federal Rules of Criminal Procedure allow the parties to raise before trial "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).  Because the question of guilt must be determined by the jury, generally it is inappropriate for a court to rule on a pretrial motion based on the sufficiency of evidence.  *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (holding that in reviewing a pretrial motion to dismiss an indictment, "an inquiry into the sufficiency of the evidence was premature.").  However, there is a narrow exception to this rule when the government has made a full proffer of its evidence and the court can determine, as a matter of law, that it cannot establish each element of the crime charged beyond a reasonable doubt. *United States v. Perez*, 575 F.3d 164, 166–67 (2d Cir. 2009)

The parties disagree as to whether the government has made a full proffer of its evidence in this case, but the statements Mr. Rose made at the VA are themselves enough to overcome dismissal.

Mr. Rose concedes that intent is the province of the jury, but he contends that the evidence is insufficient to show he made a true threat against anyone.  To constitute a true threat, a statement must not be ambiguous or hyperbolic, and Mr. Rose contends that simply carrying a firearm is not a threat to assault or murder anybody, particularly where he never identified any particular individual as a target.

In the first instance, the court is not persuaded that merely because a statement is not explicit, it is not a threat. *See, e.g., United States v. Turner,* 720 F.3d 411, 424 (2013) ("[O]ur cases . . . have affirmed convictions for threats that were both conditional and inexplicit."); *United States v. Santos*, 801 F. App'x 814, 817 (2d Cir. 2020) (affirming conviction where a defendant told his probation officer at his sentencing that when he got out, he'd "come find" the officer); (*United States v. Davila*, 461 F.3d 298, 302 (2d Cir. 2006) (finding a true threat in the sending of an envelope of baking powder with "ANTRAX" [sic] written on it).

Moreover, though, the court disagrees with Mr. Rose that his statements are so ambiguous or so clearly hyperbolic that no rational juror could find them to be a true threat. "A statement rises to the level of true threat if 'an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury.'" *United States v. Wright-Darrisaw*, 617 F. App'x 107, 108 (2d Cir. 2015) (quoting *United States v. Turner*, 720 F.3d 411, 420 (2d Cir.2013)) (alteration in original). A jury certainly could conclude that Mr. Rose's comments at the VA, after he had donned a tactical vest and retrieved a bullhorn, and after he had been followed by VA police through the building, and knowing police were supposed to escort him through the campus given his "flagged" status, would be interpreted by an ordinary, reasonable audience as a threat. A jury could conclude that Mr. Rose's statement that he would return with a firearm implies a willingness to use that firearm to inflict harm, particularly when followed with "You have been warned." The court cannot conclude that no reasonable juror could convict Mr. Rose on this evidence.

11

Accordingly, the motion to dismiss the indictment must be denied.

**IT IS SO ORDERED** at Hartford, Connecticut, this 10th day of November, 2024.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE